FILED
2021 Nov-25 AM 10:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| LATONYA CHAMES, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CASE NO.: |
| v. | ) | |
| | ) | |
| CALHOUN COUNTY SHERIFF'S | ) | PLAINTIFF DEMANDS A |
| DEPARTMENT, | ) | TRIAL BY STRUCK JURY |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## COMPLAINT

## I. JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4), 27 U.S.C. § 2201 and 2202. The jurisdiction of this court is invoked to secure protection for and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, and the Equal Pay Act ("EPA") of 1963, 29 U.S.C. § 206(d), the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3), providing injunctive and other relief against race discrimination, gender discrimination, unequal pay, and retaliation in employment.

1

## II.  PARTIES

2.      Plaintiff, LaTonya Chames, ("Plaintiff" or "Chames"), is an African American female citizen of the United States and is a resident of Jacksonville, Alabama.

3.      Defendant, Calhoun County Sheriff's Department, ("Defendant" or "Sheriff's Department") is the elected governing body of Calhoun County and makes all employment decisions for Calhoun County.

4.      At all times relevant to this action, Defendant maintained and operated collectively and in an integrated fashion as an employer in Alabama. Defendant has affected commerce, have fifteen (15) or more employees, and are employers within the meaning of Title VII, 42 U.S.C. § 2000e (b), (g) and (h).

5.      Defendant is an employment agency for purposes of Title VII.

## III. ADMINISTRATIVE PROCEDURES

6.      Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination by Defendant.

7.      On July 6, 2020, within 180 days of the last discriminatory and retaliatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). **(Exhibit A)**.

8.    On August 26, 2021, the EEOC mailed Plaintiff a letter and the Notice of Right to Sue.  **(Exhibit B).**

9.    All preconditions to suit have been met by the Plaintiff, and Plaintiff is entitled to bring this action.

## IV.  STATEMENT OF PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

10.    Plaintiff hereby adopts and realleges paragraphs one (1) through nine (9) herein above as if fully set forth herein.

11.    Plaintiff, LaTonya Chames, is an African American female.

12.    Defendant is Plaintiff's employer.

13.    In 2002, Plaintiff began working for the Defendant as a Corrections Officer for $6.00 per hour.

14.    In 2008, Plaintiff complained to the Defendant of a cartoon wallpaper on the "booking computer". The cartoon depicted a police officer holding up a black person with the caption "you have the right to remain black and blue."

15.    Plaintiff was offended by the racist booking computer wallpaper.

16.    Plaintiff has been employed by the Defendant and County for approximately eighteen (19) years.

17.    In or around 2008, Plaintiff worked for the Defendant as a Licensed Practical Nurse, "LPN", and made approximately $35,000 per year.

18.    In or around October of 2015, Plaintiff was temporarily appointed

by the Defendant as a Corrections Lieutenant for ninety (90) days and she made approximately $12.20 per hour.

19.    In or around January of 2016, Defendant continued Plaintiff's temporary Corrections Lieutenant appointment for an additional ninety (90) days at approximately $12.20 per hour.

20.    In April 2016, Defendant appointed Plaintiff's to Corrections Lieutenant for approximately $16.33 per hour.

21.    Plaintiff was paid more as a nurse than as a Lieutenant.

22.    At the time Plaintiff filed her EEOC Charge there were three (3) Lieutenants employed by the Defendant.

23.    Plaintiff is the only African American Captain, Lieutenant, or Sergeant employed by the Defendant.

24.    Plaintiff is the only female Captain or Lieutenant employed by the Defendant at the time she filed her EEOC charge.

25.    The Defendant recently hired a white female Sergeant.

26.    Plaintiff is qualified for the position of Lieutenant with the Defendant.

27.    Lieutenant Falon Hurst (white male) and Lieutenant Ronnie Murray (white male) each received approximately $55,000.00 in base pay per year.

28.    Plaintiff is also a Lieutenant and is on-call 24 hours a day and has never been a salaried employee.

29.     Plaintiff is paid approximately $15,000.00 to $17,000.00 less per year than the Defendant's other white male Lieutenants.

30.     The Defendant has two Captains, a Deputy Captain, Joseph Stone, ("Captain Stone") (white male) and a Corrections Captain, Eric Starr, (Captain Starr) (white male).

31.     Both of the Defendant's Captains make the same amount of money.

32.     In or around December 2018, Plaintiff met with her supervisor, Captain Starr, and reported the disparity in her pay.

33.     In or around December 2018, Plaintiff complained to Captain Starr that her work was equal to the Defendant's white male Lieutenants but her pay was not equal to the white male Lieutenants.

34.     Plaintiff told Captain Starr that she believed the pay disparity was based on her race and gender.

35.     In early 2019, Plaintiff met with Sheriff Wade and reported that she was paid less than the other white male Lieutenants because of her race and gender.

36.     Sheriff Wade agreed that Plaintiff's pay was unfair and told her that he would petition the Commission to increase her salary.

37.     Around April 2019, Sheriff Wade informed Plaintiff that he had petitioned the Defendant to increase her pay, but the members would not agree to

raise her salary.

38.     Shortly thereafter, Sheriff Wade told Plaintiff that he was going to draft a letter to the Commission to formally request that her pay be increased to an amount comparable to the white male Lieutenants.

39.     In May 2019, Sheriff Wade informed her that the Commission was considering increasing her salary by $5,000.00 per year.

40.     Plaintiff informed Sheriff Wade that the $5,000.00 proposed salary increase did not correct the large gap in her pay and again reported discrimination based on her race and gender.

41.     Around the end of May 2019, Plaintiff spoke with Commissioner Fred Wilson concerning the issues with her pay.

42.     Commissioner Wilson told Plaintiff that he could not help her and directed her to speak with the County Administrator, Mark Tyner ("Administrator Tyner") (white male).

43.     Plaintiff then reported her pay inequality to Mark Tyner and he informed her that he would "look into" her claims again.

44.     Administrator Tyner never followed up with Plaintiff concerning her claims of unequal pay.

45.     On June 28, 2019, Chief Deputy Jon Garlick (white male) notified Plaintiff that the Commission decided to offer her a $5,000.00 salary increase.

46.    Chief Deputy Jon Garlick presented Plaintiff with an acknowledgement to sign in exchange for the $5,000.00 per year raise.

47.    The acknowledgement stated that: 1) Sheriff Wade was financially responsible for Plaintiff's raise; Plaintiff agreed to waive her rights as a civil service employee; and that Plaintiff would forgo future raises.

48.    Plaintiff refused to sign the acknowledgment and reported that the document was presented to her in retaliation for reporting race and gender discrimination.

49.    The other white male Lieutenants received a $10,000.00 increase in pay.

50.    Around July 19, 2019, Plaintiff met with Defendant Commissioner Fred Wilson a second time reporting race and gender discrimination and told him that the Defendant's other Lieutenants make 31% more than she made for the same position.

51.    Plaintiff explained to Commissioner Wilson that she had made several reports of discrimination, contacting legal counsel, and contacting the EEOC for assistance with her discrimination claims.

52.    Commissioner Wilson discouraged Plaintiff from pursuing her discrimination claims.

53.    Commissioner Wilson warned Plaintiff that reporting discrimination to

the EEOC would work against her and create a difficult work environment for both
her and the Defendant.

54.    Then Commissioner Wilson asked Plaintiff, "Aren't you a nurse?"

55.    Plaintiff was immediately offended by Commissioner Wilson's sexist
comment because Commissioner Wilson knew Plaintiff was a nurse and also a
Corrections Lieutenant.

56.    After speaking with Commissioner Wilson, Plaintiff feared that
Plaintiff would experience additional retaliation if she contacted the EEOC.

57.    Plaintiff continues to be paid less than her white male counterparts.

## IV.    STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE
### 42 USC §1981
### RACE DISCRIMINATION CLAIM

58.    Plaintiff is African American.

59.    Defendant is Plaintiff's employer.

60.    In 2002, Plaintiff began working for the Defendant as a Corrections
Officer for $6.00 per hour.

61.    In 2008, Plaintiff complained to the Defendant of a cartoon wallpaper
on the "booking computer". The cartoon depicted a police officer holding up a black
person with the caption "you have the right to remain black and blue."

62.    Plaintiff was offended by the racist booking computer wallpaper.

63.    In or around October of 2015, Plaintiff was temporarily appointed by the Defendant as a Corrections Lieutenant for ninety (90) days and she made approximately $12.20 per hour.

64.    In or around January of 2016, Defendant continued Plaintiff's temporary Corrections Lieutenant appointment for an additional ninety (90) days at approximately $12.20 per hour.

65.    In April 2016, Defendant appointed Plaintiff's to Corrections Lieutenant for approximately $16.33 per hour.

66.    At the time Plaintiff filed her EEOC Charge there were three (3) Lieutenants employed by the Defendant.

67.    Plaintiff is the only African American Captain, Lieutenant, or Sergeant employed by the Defendant.

68.    Plaintiff is qualified for the position of Lieutenant with the Defendant.

69.    Lieutenant Falon Hurst (white) and Lieutenant Ronnie Murray (white) each received approximately $55,000.00 in base pay per year.

70.    Plaintiff is also a Lieutenant and is on-call 24 hours a day and has never been a salaried employee.

71.    Plaintiff is paid approximately $15,000.00 to $17,000.00 less per year than the Defendant's other white Lieutenants.

72.    The Defendant has two Captains, a Deputy Captain, Joseph Stone,

("Captain Stone") (white) and a Corrections Captain, Eric Starr, (Captain Starr) (white).

73.     Both of the Defendant's white Captains make the same amount of money.

74.     In or around December 2018, Plaintiff met with her supervisor, Captain Starr, and reported the disparity in her pay.

75.     In or around December 2018, Plaintiff complained to Captain Starr that her work was equal to the Defendant's white Lieutenants but her pay was not equal to the white Lieutenants.

76.     Plaintiff told Captain Starr that she believed the pay disparity was based on her race.

77.     In early 2019, Plaintiff met with Sheriff Wade and reported that she was paid less than the other white Lieutenants because of her race.

78.     Around April 2019, Sheriff Wade informed Plaintiff that he had petitioned the Defendant to increase her pay, but the members would not agree to raise her salary.

79.     Shortly thereafter, Sheriff Wade told Plaintiff that he was going to draft a letter to the Commission to formally request that her pay be increased to an amount comparable to the white Lieutenants.

80.     In May 2019, Sheriff Wade informed her that they were considering

increasing her salary by $5,000.00 per year.

81.     Plaintiff informed Sheriff Wade that the $5,000.00 proposed salary increase did not correct the large gap in her pay and again reported discrimination based on her race.

82.     Around the end of May 2019, Plaintiff spoke with Commissioner Fred Wilson concerning the issues with her pay.

83.     Commissioner Wilson told Plaintiff that he could not help her and directed her to speak with the County Administrator, Mark Tyner ("Administrator Tyner") (white).

84.     Plaintiff then reported her pay inequality to Mark Tyner and he informed her that he would "look into" her claims again.

85.     Administrator Tyner never followed up with Plaintiff concerning her claims of unequal pay.

86.     On June 28, 2019, Chief Deputy Jon Garlick (white) notified Plaintiff that the Commission decided to offer her a $5,000.00 salary increase.

87.     Chief Deputy Jon Garlick presented Plaintiff with an acknowledgement to sign in exchange for the $5,000.00 per year raise.

88.     The acknowledgement stated that: 1) Sheriff Wade was financially responsible for Plaintiff's raise; Plaintiff agreed to waive her rights as a civil service employee; and that Plaintiff would forgo future raises.

89.    Plaintiff refused to sign the acknowledgment and reported that the document was presented to her in retaliation for reporting race discrimination.

90.    The other white Lieutenants received a $10,000.00 increase in pay.

91.    Around July 19, 2019, Plaintiff met with Defendant Commissioner Fred Wilson a second time reporting race and told him that the Defendant's other white Lieutenants make 31% more than she made for the same position.

92.    Plaintiff explained to Commissioner Wilson that she had made several reports of discrimination, contacting legal counsel, and contacting the EEOC for assistance with her discrimination claims.

93.    Commissioner Wilson discouraged Plaintiff from pursuing her discrimination claims.

94.    Commissioner Wilson warned Plaintiff that reporting discrimination to the EEOC would work against her and create a difficult work environment for both her and the Defendant.

95.    Plaintiff continues to be paid less than her white male counterparts.

96.    Defendant's actions are in violation of 42 U.S.C. § 1981, as amended.

97.    Plaintiff is a member of a protected class.

98.    Plaintiff's race was the but-for cause of the Defendant's discrimination.

99.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by

this Court.

100.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, compensatory damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

101.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

102.   Plaintiff has satisfied all administrative prerequisites pursuant to 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.     Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by 42 U.S.C. § 1981, as amended;

b.     Grant Plaintiff a permanent injunction enjoining Defendant, their Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating 42 U.S.C. § 1981 as amended;

c.     Grant Plaintiff an Order requiring Defendant to make her whole by

granting appropriate declaratory relief, (including backpay and front-pay), compensatory damages (including damages for mental anguish), interest, attorney's fees, expenses, costs; and

d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT TWO & THREE
## 42 U.S.C. § 1981 & TITLE VII
## RETALIATION CLAIMS

103.    Plaintiff is African American.

104.    Plaintiff is a female.

105.    Plaintiff is in a protected class.

106.    Defendant is Plaintiff's employer.

107.    In or around October of 2015, Plaintiff was temporarily appointed by the Defendant as a Corrections Lieutenant for ninety (90) days and she made approximately $12.20 per hour.

108.    In or around January of 2016, Defendant continued Plaintiff's temporary Corrections Lieutenant appointment for an additional ninety (90) days at approximately $12.20 per hour.

109.    In April 2016, Defendant appointed Plaintiff's to Corrections Lieutenant for approximately $16.33 per hour.

110.    Plaintiff is the only African American and/or female Captain, and/or

Lieutenant employed by the Defendant.

111.   Plaintiff is qualified for the position of Lieutenant with the Defendant.

112.   Lieutenant Falon Hurst (white male) and Lieutenant Ronnie Murray (white male) each received approximately $55,000.00 in base pay per year.

113.   Plaintiff is paid approximately $15,000.00 to $17,000.00 less per year than the Defendant's other white male Lieutenants.

114.   The Defendant has two Captains, a Deputy Captain, Joseph Stone, ("Captain Stone") (white male) and a Corrections Captain, Eric Starr, (Captain Starr) (white male).

115.   Both of the Defendant's Captains make the same amount of money.

116.   However the Defendant's Lieutenants do not make the same amount of money.

117.   In or around December 2018, Plaintiff met with her supervisor, Captain Starr, and reported the disparity in her pay.

118.   In or around December 2018, Plaintiff complained to Captain Starr that her work was equal to the Defendant's white male Lieutenants but her pay was not equal to the white male Lieutenants.

119.   Plaintiff told Captain Starr that she believed the pay disparity was based on her race and gender.

120.   In early 2019, Plaintiff met with Sheriff Wade and reported that she

was paid less than the other white male Lieutenants because of her race and gender.

121.   Sheriff Wade agreed that Plaintiff's pay was unfair and told her that he would petition the Commission to increase her salary.

122.   In May 2019, Sheriff Wade informed her that the Commission was considering increasing her salary by $5,000.00 per year.

123.   Plaintiff informed Sheriff Wade that the $5,000.00 proposed salary increase did not correct the large gap in her pay and again reported discrimination based on her race and gender.

124.   Around the end of May 2019, Plaintiff spoke with Commissioner Fred Wilson concerning the issues with her pay.

125.   Commissioner Wilson told Plaintiff that he could not help her and directed her to speak with the County Administrator, Mark Tyner ("Administrator Tyner") (white male).

126.   Plaintiff then reported her pay inequality to Mark Tyner and he informed her that he would "look into" her claims again.

127.   Administrator Tyner never followed up with Plaintiff concerning her claims of unequal pay.

128.   On June 28, 2019, Chief Deputy Jon Garlick (white male) notified Plaintiff that the Commission decided to offer her a $5,000.00 salary increase.

129.   Chief Deputy Jon Garlick presented Plaintiff with an acknowledgement to sign in exchange for the $5,000.00 per year raise.

130.   The acknowledgement stated that: 1) Sheriff Wade was financially responsible for Plaintiff's raise; Plaintiff agreed to waive her rights as a civil service employee; and that Plaintiff would forgo future raises.

131.   Plaintiff refused to sign the acknowledgment and reported that the document was presented to her in retaliation for reporting race and gender discrimination.

132.   The other white male Lieutenants received a $10,000.00 increase in pay.

133.   Around July 19, 2019, Plaintiff met with Defendant Commissioner Fred Wilson a second time reporting race and gender discrimination and told him that the Defendant's other Lieutenants make 31% more than she made for the same position.

134.   Plaintiff explained to Commissioner Wilson that she had made several reports of discrimination, contacting legal counsel, and contacting the EEOC for assistance with her discrimination claims.

135.   Commissioner Wilson discouraged Plaintiff from pursuing her discrimination claims.

136.   Commissioner Wilson warned Plaintiff that reporting discrimination to

the EEOC would work against her and create a difficult work environment for both her and the Defendant.

137.    After speaking with Commissioner Wilson, Plaintiff feared that Plaintiff would experience additional retaliation if she contacted the EEOC.

138.    Plaintiff continues to be paid less than her white male counterparts.

139.    Defendant only offered her a $5000.00 raise and an acknowledgement waiving all future raises because she complained about Defendants' discriminatory practices and for engaging in protected activity.

140.    Defendants have a pattern of retaliatory conduct against employees who have complained of conduct prohibited by the federal civil rights statutes.

141.    Plaintiff has been directly affected by the retaliatory practices described in this Complaint.

142.    Plaintiff avers that she has been unjustly compensated and retaliated against for engaging in a protected activity, and that there is a causal link between Plaintiff engaging in a protected activity and the adverse actions she suffered.

143.    Plaintiff engaged in a protected activity when she complained to her Captain, Chief Deputy, Sheriff, and Commissioners about being treated differently based on her race and gender.

144.    Plaintiff complaining several times about the Defendant's race and gender discrimination was the but-for cause of the Defendant's retaliation.

145.   Plaintiff has been retaliated against in violation of 42 U.S.C. § 1981.

146.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, attorney's fees, injunctive relief and declaratory judgment is her only means of securing adequate relief.

147.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

148.   Plaintiff has satisfied all administrative prerequisites pursuant to Title VII and 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.      Enter a declaratory judgment that Defendants' policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the "Civil Rights Act of 1964," as amended, and 42 U.S.C. § 1981, as amended;

b.      Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendants or at Defendants' request from violating Title VII of the "Civil Rights

Act of 1964," as amended, and 42 U.S.C. § 1981, as amended;

c.    Grant Plaintiff an Order requiring Defendants make her whole by granting appropriate declaratory relief, (including backpay and front-pay), compensatory damages (including damages for mental anguish), interest, attorney's fees, expenses, costs; and

d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

**COUNT FOUR**
**TITLE VII**
**RACE DISCRIMINATION CLAIMS**

149.    Plaintiff incorporates ¶58-97 above.

150.    The Defendant discriminated against Plaintiff based on her race.

151.    Defendant subjected Plaintiff to adverse treatment and race discrimination with respect to the terms and conditions of her employment.

152.    Plaintiff's race was a substantial or motivating factor in Defendant's unlawful and adverse treatment of Plaintiff.

153.    Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

154.    Defendant, upon information and belief, has a habit and/or practice of discriminating against African American employees.

155.    Defendant's illegal discriminatory and adverse actions injured Plaintiff.

156.   Plaintiff was subjected to discriminatory terms and conditions of employment because of her race, African American.

157.   Defendant condoned and tolerated gender and race discrimination, and Defendant's actions were in violation of Title VII of the "Civil Rights Act of 1964," as amended.

158.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, compensatory damages, punitive damages, attorney fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

159.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

160.   Plaintiff has satisfied all administrative prerequisites pursuant to Title VII, as amended.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.   Enter a declaratory judgment that Defendants' policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the Civil Rights Act of 1964, as amended;

b.      Grant Plaintiff a permanent injunction enjoining Defendants, their Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the Civil Rights Act of 1964, as amended;

c.      Grant Plaintiff an Order requiring Defendants to make her whole by granting appropriate declaratory relief, injunctive relief (including backpay and front-pay), compensatory damages (including damages for mental anguish), interest, attorney's fees, expenses, costs; and

d.      Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

**COUNT FIVE**
**TITLE VII**
**GENDER DISCRIMINATION CLAIMS**

161.   Plaintiff, LaTonya Chames, is a female.

162.   Defendant is Plaintiff's employer.

163.   In 2002, Plaintiff began working for the Defendant as a Corrections Officer for $6.00 per hour.

164.   Plaintiff has been employed by the Defendant and County for approximately eighteen (19) years.

165.   In or around 2008, Plaintiff worked for the Defendant as a Licensed

Practical Nurse, "LPN".

166.   In or around October of 2015, Plaintiff was temporarily appointed by the Defendant as a Corrections Lieutenant for ninety (90) days and she made approximately $12.20 per hour.

167.   In or around January of 2016, Defendant continued Plaintiff's temporary Corrections Lieutenant appointment for an additional ninety (90) days at approximately $12.20 per hour.

168.   In April 2016, Defendant appointed Plaintiff's to Corrections Lieutenant for approximately $16.33 per hour.

169.   At the time Plaintiff filed her EEOC Charge there were three (3) Lieutenants employed by the Defendant.

170.   Plaintiff is the only female Captain or Lieutenant employed by the Defendant.

171.   Since Plaintiff filed her EEOC charge in 2019, the Defendant one hired a white female Sergeant.

172.   Plaintiff is qualified for the position of Lieutenant with the Defendant.

173.   Lieutenant Falon Hurst (white male) and Lieutenant Ronnie Murray (white male) each received approximately $55,000.00 in base pay per year.

174.   Plaintiff is also a Lieutenant and is on-call 24 hours a day and has never been a salaried employee.

175.   Plaintiff is paid approximately $15,000.00 to $17,000.00 less per year than the Defendant's other white male Lieutenants.

176.   The Defendant has two Captains, a Deputy Captain, Joseph Stone, ("Captain Stone") (white male) and a Corrections Captain, Eric Starr, (Captain Starr) (white male).

177.   Both of the Defendant's Captains make the same amount of money.

178.   In or around December 2018, Plaintiff met with her supervisor, Captain Starr, and reported the gender disparity in her pay.

179.   In early 2019, Plaintiff met with Sheriff Wade and reported that she was paid less than the other male Lieutenants because of her gender.

180.   Around April 2019, Sheriff Wade informed Plaintiff that he had petitioned the Defendant to increase her pay, but the members would not agree to raise her salary.

181.   In May 2019, Sheriff Wade informed her that the Commission was considering increasing her salary by $5,000.00 per year.

182.   Plaintiff informed Sheriff Wade that the $5,000.00 proposed salary increase did not correct the large gap in her pay and again reported discrimination based on her gender.

183.   Around the end of May 2019, Plaintiff spoke with Commissioner Fred Wilson (male) concerning the issues with her pay.

184.   Commissioner Wilson told Plaintiff that he could not help her and directed her to speak with the County Administrator, Mark Tyner ("Administrator Tyner") (male).

185.   Plaintiff then reported her pay inequality to Mark Tyner and he informed her that he would "look into" her claims again.

186.   Administrator Tyner never followed up with Plaintiff concerning her claims of unequal pay because of her gender.

187.   On June 28, 2019, Chief Deputy Jon Garlick (male) notified Plaintiff that the Commission decided to offer her a $5,000.00 salary increase.

188.   Chief  Deputy  Jon  Garlick  presented  Plaintiff  with  an acknowledgement to sign in exchange for the $5,000.00 per year raise.

189.   The acknowledgement stated that: 1) Sheriff Wade was financially responsible for Plaintiff's raise; Plaintiff agreed to waive her rights as a civil service employee; and that Plaintiff would forgo future raises.

190.   Plaintiff refused to sign the acknowledgment and reported that the document was presented to her in retaliation for reporting gender discrimination.

191.   The other male Lieutenants received a $10,000.00 increase in pay.

192.   Around July 19, 2019, Plaintiff met with Defendant Commissioner Fred Wilson a second time reporting race and gender discrimination and told him that the Defendant's other Lieutenants make 31% more than she made for the same

position.

193.   Plaintiff explained to Commissioner Wilson that she had made several reports of discrimination, contacting legal counsel, and contacting the EEOC for assistance with her discrimination claims.

194.   Commissioner Wilson warned Plaintiff that reporting gender discrimination to the EEOC would work against her and create a difficult work environment for both her and the Defendant.

195.   Then Commissioner Wilson asked Plaintiff, "Aren't you a nurse?"

196.   Plaintiff was immediately offended by Commissioner Wilson's sexist comment because Commissioner Wilson knew Plaintiff was a nurse and also a Corrections Lieutenant.

197.   Plaintiff continues to be paid less than her male counterparts.

198.   Defendant discriminated against Plaintiff based on her gender.

199.   Defendant subjected Plaintiff to adverse treatment and gender discrimination with respect to the terms and conditions of her employment.

200.   Plaintiff's gender was a substantial or motivating factor in Defendant's unlawful and adverse treatment of Plaintiff.

201.   Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

202.   Defendant, upon information and belief, has a habit and/or practice of

discriminating against female employees.

203.   Defendant's illegal discriminatory and adverse actions injured Plaintiff.

204.   Plaintiff was subjected to discriminatory terms and conditions of employment because of her gender, female.

205.   Defendant condoned and tolerated gender and gender discrimination, and Defendant's actions were in violation of Title VII of the "Civil Rights Act of 1964," as amended.

206.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

207.   Plaintiff has satisfied all administrative prerequisites pursuant to Title VII, as amended.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.     Enter a declaratory judgment that Defendants' policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the Civil Rights Act of 1964, as amended;

b.     Grant Plaintiff a permanent injunction enjoining the Defendant, their Agents, Successors, Employees, Attorneys, and those acting in concert with

Defendant or at Defendant's request from violating Title VII of the Civil Rights Act of 1964, as amended;

c.     Grant Plaintiff an Order requiring Defendant to make her whole by granting appropriate declaratory relief, injunctive relief (including backpay and front-pay), compensatory damages (including damages for mental anguish), interest, attorney's fees, expenses, costs; and

d.     Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT SIX
### THE EQUAL PAY ACT - 29 U.S.C. § 206(d) & THE LILLY LEDBETTER FAIR PAY ACT OF 2009 - 42 U.S.C. § 2000e-5(e)(3) UNEQUAL PAY CLAIMS

208.    Defendant is Plaintiff's employer.

209.    Plaintiff has been employed by the Defendant and County for approximately eighteen (19) years.

210.    In 2002, Plaintiff began working for the Defendant as a Corrections Officer for $6.00 per hour.

211.    In or around 2008, Plaintiff worked for the Defendant as a Licensed Practical Nurse, "LPN", and made approximately $35,000 per year.

212.    In or around October of 2015, Plaintiff was temporarily appointed by the Defendant as a Corrections Lieutenant for ninety (90) days and she made

approximately $12.20 per hour.

213.   In or around January of 2016, Defendant continued Plaintiff's temporary Corrections Lieutenant appointment for an additional ninety (90) days at approximately $12.20 per hour.

214.   In April 2016, Defendant appointed Plaintiff's to Corrections Lieutenant for approximately $16.33 per hour.

215.   Plaintiff was paid more as a nurse than as a Lieutenant.

216.   At the time Plaintiff filed her EEOC Charge there were three (3) Lieutenants employed by the Defendant.

217.   Plaintiff is the Defendant's only female Captain or Lieutenant employed by the Commission.

218.   Since Plaintiff filed her EEOC charge, Defendant has hired one (1) female Sergeant.

219.   The other two Lieutenants, Lieutenant Falon Hurst (male) and Lieutenant Ronnie Murray (male) each received approximately $55,000.00 in base pay per year.

220.   Plaintiff is paid approximately $15,000.00 to $17,000.00 less per year than the Defendant's other white male Lieutenants.

221.   Plaintiff performed substantially the same work as a female Lieutenant the Defendant's male Lieutenants.

222.   Plaintiff worked in the same establishment as the Defendant's male Lieutenants.

223.   Defendant paid male employees at a higher rate of pay than they did Plaintiff for the same job that require substantially equal skill, effort, and responsibility and which are performed under similar working conditions.

224.   Each pay check that the Plaintiff received as a Lieutenant was/is discriminatory compensation.

225.   Male employees with less experience were given a higher rate of pay and incentives than Plaintiff.

226.   At the time the Defendant hired Lieutenant Falon Hurst (male) and Lieutenant Ronnie Murray (male) and paid him an initial hire wage, the Defendant knew that the Equal Pay Act required that men and women in the same workplace be given equal pay for equal work.

227.   Defendant's violation of the Equal Pay Act was willful and intentional.

228.   Plaintiff seeks declaratory and injunctive relief, including unpaid minimum wages and benefits as defined in 29 U.S.C. § 216(b), an additional equal amount in liquidated damages, and attorney's fees and costs.

## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

Respectfully submitted on November 24, 2021.

/s/ *Nicole D. Edwards*
State Bar I.D. No. ASB-4832-B19D

/s/ *Blake C. Edwards*
State Bar ID No: ASB-5200-T60B
*Attorneys for Plaintiff*

**OF COUNSEL:**
**EDWARDS & EDWARDS ATTORNEY AND MEDIATORS, PLLC**
3603 Pine Lane SE, Ste. C
Bessemer, AL 35022
Tel.:   (205) 549-1379
Fax:   (205) 719-4033
E-mail: nicole@edwardsattys.com
        blake@edwardsattys.com

**PLAINTIFF'S ADDRESS**:
Ms. LaTonya Chames
c/o EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane, Suite C
Bessemer, Alabama 35022

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**
Calhoun County Sheriff's Department
1702 Noble Street
Anniston, Alabama 36201